UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JIMMIE ALLISON PERRYMAN,<br><br>Defendant. | No. 2:08-cr-00197-KJM<br><br><br><br>ORDER |

  Defendant Jimmie Perryman moves for an order granting a reduction of his sentence to time served under 18 U.S.C. § 3582(c). Mot., ECF No. 274. The government filed a statement of non-opposition. Stmt. of Non-Opp'n, ECF No. 280. Defendant makes this motion in light of the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and to him in particular. For the following reasons, the court GRANTS defendant's motion.

I. BACKGROUND

  The government filed a complaint on June 25, 2009, alleging defendant conspired with other codefendants to traffic cocaine from San Francisco to Detroit. Compl., ECF No. 1. On April 21, 2017, defendant pled guilty to count one of a superseding indictment, a violation of 21 U.S.C. §§ 846 and 841(a)(1). Change of Plea Mins., ECF No. 248. On December 1, 2017, Judge Garland E. Burrell sentenced defendant to 78 months of imprisonment and 36 months of

1

supervised release. Sent. Mins., ECF No. 263. Defendant, who was out of custody, had a surrender date of February 1, 2018. *Id.* The presentence report computed his criminal history in consideration of the fact that he was on a ten year term of probation from a conviction for simple possession of marijuana in Texas in 2003. PSR, ECF No. 259 at 7.

Defendant has served approximately 30 months of his 78-month sentence. Stmt. of Non-Opp'n at 3. However, if he successfully completes his RDAP program, he would be eligible for home confinement on February 15, 2022. *Id.* Defendant is housed at Federal Correctional Institution Morgantown ("FCI Morgantown") in West Virginia. Mot. at 1. The Bureau of Prisons ("BOP") reports no active cases and two recovered staff cases at FCI Morgantown as of this writing. *See* Bureau of Prisons (BOP), *COVID-19 Cases* (updated daily), (last accessed September 14, 2020)[1]. However, the court notes the government's statement of non-opposition asserts only one recovered staff case (as of August 10, 2020), and does not account for a second staff infection and recovery since its filing. Stmt. of Non-Opp'n at 3 (citing *id.* (last accessed August 10, 2020)).

Defendant asserts he has a plethora of medical conditions that make him particularly vulnerable to serious harm from COVID-19. He asserts that he suffers from, *inter alia,* high blood pressure, diabetes, gout, arthritis, sickle-cell anemia, hypothyroidism, obesity, sleep apnea, chronic kidney disease stage 2, cardiac murmur, malignant neoplasm of stomach, as well as yet-undiagnosed "abnormal findings in his blood, body fluids, and substances." Mot. at 3. Furthermore, he is a survivor of multiple incidences of cancer—gastric cancer and papillary thyroid cancer. *Id.* Attached to his motion are medical records in support. *See generally* Mot. Ex. 2 ("Medical Records"), ECF No. 274–2.

On April 8, 2020, defendant sent an email to his counselor asserting he would be a candidate for release. Mot. at 9 (citing Ex. H ("Perryman Requests to BOP"), ECF No. 274–8). On May 18, 2020, he submitted a written request to the Warden of FCI Morgantown. *Id.* The Warden denied his request on June 8, 2020. *Id.* On June 29, 2020, BOP issued him an

---

[1] https://www.bop.gov/coronavirus/

"Administrative Remedy Receipt" for a further denial of administrative remedies from BOP. Ex. I, ECF No. 274-9.

Defendant proposes to return to a home in Highland Park, Michigan, that was passed down to him by his mother after she passed away. Mot. at 22, *see also* PSR at 11. He would live there with his spouse, Antoinette Perryman, who is employed at a senior care and rehab center. Antoinette Perryman Decl., ECF No. 274-5 ¶ 3. His youngest child, Josh, who is 25, lives at the home, as well as his brother David. *Id.* ¶ 6. He receives disability payments of approximately $2,500 per month. Mot. at 5. He would receive medical care from the John D. Dingell Veteran Affairs Medical Center in Detroit. *Id* at 22. He has been active with programming at FCI Morgantown, completing multiple classes including a second GED. *Id.* at 6. He testifies he has had no incidents since his incarceration. Jimmie Perryman Decl., ECF No. 274–4 ¶ 7.

II.     LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T[he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody. 18 U.S.C. § 3582(c)(1)(A). Second, the court must consider the same factors

1  applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they
2  remain applicable at the time the motion is brought.  *Id.*

3          The statute further requires "that such a reduction is consistent with applicable
4  policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).  In 2006, the
5  Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and
6  compelling reasons" to release a defendant from BOP custody, which was last amended
7  November 1, 2018.  *See* U.S.S.G. § 1B1.13.  Since passage in December 2018 of the First Step
8  Act (FSA),[2] which amended § 3582 to allow a defendant to file a motion for compassionate
9  release directly with the court, district courts have disagreed whether U.S.S.G. § 1B1.13 remains
10 binding.  A number of district courts nationwide have determined that the policy statement
11 provision "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D.
12 Tex. 2019), because the statement has not been amended since the First Step Act passed to reflect
13 that both defendants and the BOP may move for compassionate release.  *See United States v.*
14 *Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United*
15 *States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting
16 "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an
17 intent from Congress that district courts may now consider whether extraordinary and compelling
18 reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1"
19 (citations omitted)).  Many courts in this circuit have nonetheless "turned to U.S.S.G. § 1B1.13 to
20 provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in
21 sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2
22 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020
23 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522
24 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary
25 controlling authority, and given the limited statutory exceptions to the general rule of the finality
26 of judgments, this court will continue to follow the guidance of the Sentencing Commission's
27

---

28 [2] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

4

policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-35334 (April 13, 2020). However, there is also a strong contingent of cases in which the presiding judge has concluded the guidelines are no longer limiting, and the court has discretion to define what constitutes an "extraordinary and compelling" reason. *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering the policy statement as guidance).

In resolving the instant motion, this court considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context. The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

III. DISCUSSION

The government concedes defendant has exhausted his administrative remedies as required by the statute. The court now addresses the merits of the motion.

A. Extraordinary and Compelling Reasons

Setting aside whether the policy statement fits the statute, not having been revised since the enactment of the First Step Act, both defendant and the government appear to agree defendant's case fits an existing prong of the policy statement. Mot. at 17–18; Stmt. of Non-Opp'n at 4. Specifically, the policy statement provides for release when the defendant has a

serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii). Defendant argues "during this pandemic, self-care for a person means taking extra precautions to maintain hygiene, a sterile environment, and physical distance from others, especially if there is an outbreak of COVID-19 in the area." Mot. at 23. Defendant testifies that he sleeps within three feet of his bunkmates and is generally in close quarters with other inmates. Jimmie Perryman Decl. ¶ 8–10. He also asserts BOP is not testing anyone in the facility. *Id.* ¶ 19.

The government concedes defendant has the medical conditions he describes in his motion, and that they "render him uniquely vulnerable to COVID-19 and at a serious risk for serious illness should he fall ill." Stmt. of Non-Opp'n at 6. While the government contests defendant's characterization of conditions at FCI Morgantown, it concedes his medical conditions are an extraordinary and compelling reason to release him.

In light of this record and the government's non-opposition, the court finds defendant's medical conditions create a serious risk of severe harm should COVID-19 begin to spread at FCI Morgantown as it has at other facilities throughout the country. This is an extraordinary and compelling circumstance in favor of defendant's release.

B. Danger to the Community

"[T]he Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *Esparza*, 2020 WL 1536155, at *3 (citing U.S.S.G. § 1B1.13). Under the guidance of U.S.S.G. § 1B1.13, the court considers whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. Under § 3142(g), defendant has the burden of production of "some credible evidence forming a basis for his contention that he will [. . .] not pose a threat to the community." *United States v. Thomas*, 667 F. Supp. 727, 728 (D. Ore. 1987). However, the ultimate burden of showing danger to the community is with the government by clear and convincing evidence. *United States v. Moore*, 607 F. Supp. 487, 497 (N.D. Cal. 1985).

    The court is satisfied defendant will not pose a danger to the community.  His sole prior conviction was simple possession of marijuana; while substantially more serious, his conviction for conspiracy to distribute cocaine is not inherently dangerous.  Furthermore, the government concedes it has no evidence indicating defendant is a danger to the community.  Stmt. of Non-Opp'n at 6.  As an older individual with substantial health issues, means of support, and a supportive family structure, the court finds defendant does not pose a danger to the community.

  C. <u>Other Section 3553(a) Factors</u>

    Defendant's crime of conviction was a serious one.  But just as the court agreed to a downward variance in sentencing in consideration of defendant's health on sentencing, the court now finds the calculus weighs in favor of release.  Defendant has served a significant portion of his sentence, and the government concedes he is a candidate for release in other respects.  For the same reasons he will not pose a danger, he is also a good candidate for release.

IV. CONCLUSION

    For the foregoing reasons, the court hereby GRANTS defendant Jimmie Allison Perryman's motion for compassionate release with modifications and ORDERS as follows:

  1. Defendant's sentence of imprisonment is modified to time served, and the court requests that the Warden of FCI Morgantown immediately place defendant in quarantine so that defendant may serve a 14-day period of quarantine before his release;

  2. Defendant shall be released from custody following his completion of a 14-day period of quarantine if he has not displayed any symptoms of or tested positive for COVID-19, and is to be transported forthwith by his brother to a residence approved by the United States Probation Office;[3]

  3. This court shall retain jurisdiction during the 14-day period and, if defendant tests positive during the initial 14-day period, the government will notify the court and seek an

---

[3] The court understands Mr. Perryman proposes to release to a location in the Eastern District of Michigan, and that the U.S Probation Office there is aware of his residency plan and has approved them.  Mr. Perryman is reminded that as ordered at the time of his sentencing, he must report promptly to the U.S. Probation Office for the district in which he is released, and otherwise comply with all conditions of release previously ordered.

7

extension of the release date until the defendant has displayed no symptoms for a period of 14 days or tested negative for COVID-19;

    4.    Defendant shall begin serving the previously ordered 36-month term of supervised release ("TSR") upon his release from custody.

    5.    For the first six months of the TSR, defendant shall be subject to: (a) a special condition commanding the defendant to be subject to home detention with electronic location-monitoring at a residence approved by the United States Probation Office, and (b) all of the terms and conditions set forth in the original Judgment (ECF No. 264).

    6.    The special condition commanding home detention shall read as follows:

> The defendant shall be monitored for a period of six months, with location monitoring technology, which may include the use of radio frequency (RF), Global Positioning System (GPS) devices, Voice Recognition or Smartlink, at the discretion of the probation officer. The defendant shall abide by all technology requirements, which could include the requirement of a cellular phone (SmartLink) or the installation of a landline (VoiceID).  He shall pay the costs of location monitoring based upon their ability to pay as directed by the probation officer. In addition to other court-imposed conditions of release, the defendant's movement in the community shall be restricted as follows:
>
> The defendant shall be restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; Court-ordered obligations; or other activities as pre-approved by the probation officer.

    7.    After the six-month period of home detention, defendant shall serve the remainder of the TSR subject to all of the terms and conditions set forth in the original Judgment.

    IT IS SO ORDERED.

DATED: September 15, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

8